**Frances SARACENO and Louis Saraceno, Plaintiffs,**

v.

**S. C. JOHNSON AND SON, INC. and Johnson Wax Europlant, B. V., Defendants.**

**No. 78 CIV 1788 (LBS).**

United States District Court, S. D. New York.

July 8, 1980.

See also D.C., 83 F.R.D. 65.

Herzfeld & Rubin, P. C., New York City, Herbert Rubin, Daniel V. Gsovski, New York City, for plaintiffs.

Davis, Polk & Wardwell, Lawrence E. Walsh, Ogden N. Lewis, Mark E. Segall, New York City, for Johnson Wax Europlant, B. V.

Simpson, Thacher & Bartlett, Edward C. Mendrzycki, Eugene H. Lieber, New York City, for S. C. Johnson & Son, Inc.

## OPINION

SAND, District Judge.

Plaintiffs are New York residents who seek to recover damages for injuries suffered while they were living in Spain. The injuries allegedly resulted from the explosion of a can of "Raid" manufactured in Europe and sold in Spain by the defendant, Johnson Wax Europlant, B. V. ("Europlant"), a Dutch corporation. In an opinion filed May 7, 1979, *Saraceno v. S. C. Johnson and Son, Inc. and Johnson Wax Europlant, B. V.*, 83 F.R.D. 65 (S.D.N.Y.1979) ("*Saraceno* I"), this Court granted defendant Europlant's motion to dismiss for lack of *in personam* jurisdiction.[1] The underlying facts and procedural history are set forth in that opinion and will not be repeated in detail here.

Prior to the filing of *Saraceno* I, plaintiffs attached three insurance policies issued to Europlant by insurance carriers with offices in New York in an attempt to secure an additional jurisdictional basis under the doctrine of *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99 (1966), and its progeny. Plaintiffs subsequently moved to confirm the order of attachment pursuant to N.Y.C. P.L.R. § 6211 (McKinney's 1980). In an opinion dated June 26, 1979, *Saraceno v. S.*

*C. Johnson and Son, Inc. and Johnson Wax Europlant, B. V.*, 78 Civ. 1788 (S.D.N.Y. 1979) (slip op.) ("*Saraceno* II"), this Court confirmed the order of attachment of Europlant's primary liability policy but vacated the order of attachment of two excess coverage policies. The action against Europlant has thus proceeded to this point solely on the basis of a "*Seider*-type" attachment.[2]

On January 21, 1980, while a motion by Europlant to dismiss on the ground of *forum non conveniens* was pending before this Court, the Supreme Court of the United States rendered its decision in *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The parties do not dispute that in the aftermath of *Rush*, jurisdiction over a non-resident may not be based solely on a *Seider*-type attachment. *See Erneta v. Princeton Hospital*, 49 N.Y.2d 829, 427 N.Y.S.2d 794, 404 N.E.2d 1335 (1980) (concurring opinion of Jasen, J.), *reversing* 66 App.Div.2d 669, 411 N.Y.S.2d 13 (1st Dept. 1978) and reinstating an order of the Supreme Court, New York County, which had granted defendant's motion to strike a prior order of attachment and dismissed the complaint for lack of jurisdiction. *See also, Morehouse v. Volkswagen, A. G.*, 427 N.Y.S.2d 514 (App.Div., 1980) (slip op.) (*Rush* "unquestionably signals the demise of jurisdiction based on *Seider v. Roth* "). Europlant now seeks an order (1) vacating this Court's prior order of June 26, 1979 which confirmed the attachment of Europlant's primary liability policy and (2) dismissing the complaint against it for lack of jurisdiction. Alternatively, Europlant renews its pending motion for dismissal of the complaint on the ground of *forum non conveniens*. The defendant S. C. Johnson and Son, Inc. ("Johnson") also renews its motion to dismiss on the ground of *forum non conveniens*. For the reasons stated herein, Europlant's motion to dismiss for

---

1. After analyzing New York case law, which is of course controlling in this diversity action, we concluded in *Saraceno* I that plaintiffs were unable despite extensive discovery to demonstrate that Europlant was "doing business" in New York pursuant to N.Y.C.P.L.R. § 301.

(McKinney's 1972). Section 301 was the only basis for jurisdiction then asserted by plaintiffs.

2. *But see*, our discussion of plaintiffs' most recent jurisdictional contentions, *infra*.

lack of jurisdiction is granted and Johnson's motion to dismiss on the ground of *forum non conveniens* is denied.

I. *Europlant's Motion to Dismiss for Lack of Jurisdiction.*

■ In *Rush v. Savchuk*, the Supreme Court held that a state may not constitutionally exercise its *"quasi-in-rem"* jurisdiction over a non-resident defendant solely on the basis of an attachment of the contractual obligation of an insurer licensed to do business in the state to defend and indemnify that defendant. The Court concluded that such an attachment has no jurisdictional significance and that, without more, "the fictitious presence of the insurer's obligation . . . [does not] provide a basis for concluding that there is *any* contact in the *International Shoe* [*Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] sense . . . ." (emphasis by the Court). Since Europlant contends that the only basis for jurisdiction in this case is the attachment confirmed in *Saraceno* II, it takes the position that *Rush* mandates a dismissal here on jurisdictional grounds. Plaintiffs deny that jurisdiction in this case is based solely on the attachment. They argue, moreover, that *Rush* should not in any event be applied retroactively to cases pending at the time it was decided and that, consequently, a *Seider*-type attachment which preceded *Rush* is still a valid jurisdictional basis.[3]

■ "The general rule of long standing is that judicial precedents normally have retroactive as well as prospective effect." *Kremer v. Chemical Construction Corp.*, 623 F.2d 786, 788 (2d Cir. 1980), quoting *Nation-*

al *Association of Broadcasters v. Federal Communications Commission*, 554 F.2d 1118, 1130 (D.C.Cir.1976). In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the Supreme Court formulated an exception to this general rule which was recently relied on by the Second Circuit in *Kremer v. Chemical Construction Corp., supra* :

"First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purposes and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (citations omitted).

Before discussing the significance of each of the *Huson* factors in the context of this case, we note that we are not faced with the question whether *Rush* should be applied to a case in which a final judgment has been entered and an appeal has been taken or the deadline for an appeal has run. We deal here only with the question whether *Rush* applies to cases pending at the time it was decided.[4] *See Linkletter v. Walker*,

---

3. Plaintiffs also contend that whether *Rush* is to be given retroactive effect is a question "in the first instance, most appropriately . . . resolved by the Courts of New York as a matter of judicial policy". (Plaintiffs' Memorandum In Opposition, p. 18). *See Gager v. White*, 428 N.Y.S.2d 808 (Sup.Ct., N.Y.Cty., 1980) (by remaining silent on the retroactivity question, the Supreme Court left it for the states to decide how to apply *Rush* to pending actions). This Court rejects the notion that a federal court cannot or should not determine, insofar as it relates to a case before it, the parameters

of a recent Supreme Court decision on a federal constitutional issue. Indeed, it is our view that the retroactivity of a case involving due process standards is a federal rather than a state law question. *But see Gager v. White, supra.*

4. There is support for the proposition that the answer to this question should be a simple "yes". *See Mackey v. United States*, 401 U.S. 667, 675, 681, 91 S.Ct. 1160, 1164, 1174, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring). For Justice Harlan, the application of the retroactivity doctrine to pending cases in a situation

381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (holding that although *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was applied to cases pending on direct review at the time it was rendered, it would not be applied to state court convictions which had become final before its rendition).

Plaintiffs contend, in essence, that the first of the *Huson* factors is satisfied, and that they were entitled to rely on the validity of their *Seider*-type attachment because the *Seider* "doctrine" had "repeatedly withstood challenge in the state and federal courts." (Plaintiffs' Memorandum in Opposition, p. 20). Indeed, there is considerable support for this position. The Court of Appeals of the State of New York had consistently adhered to *Seider, see e. g., Baden v. Staples*, 45 N.Y.2d 889, 410 N.Y. S.2d 808, 383 N.E.2d 110 (1978), and the Second Circuit, faced with a challenge to *Seider* in light of the Supreme Court's decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), only recently reaffirmed its earlier conclusion that a *Seider*-type attachment satisfies the standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978); *Minichiello v.*

*Rosenberg*, 410 F.2d 106 (2d Cir. 1968), *cert. denied*, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969).

Despite this impressive array of pre-*Rush* case law upholding the constitutionality of *Seider*-type attachments, it is not at all clear to the Court that *Rush* overrules "clear past precedent" in the *Huson* sense. *Chevron Oil Co. v. Huson*, 404 U.S. at 106– 07, 92 S.Ct. at 355. As plaintiff concedes, *Seider* has long been subject to criticism. More importantly, as *Rush* notes, *Seider*-type attachments have been rejected on state law or constitutional grounds by at least nine states and three circuits, and have been adopted as a jurisdictional device in only one state other than New York.[5] *Rush v. Savchuk, supra*, at n.13. In our view, moreover, after the Supreme Court ruled in *Schaffer v. Heitner* that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny", there was considerable doubt as to the continued viability of *Seider*, particularly since *Shaffer* explicitly overruled *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905).[6] *But see, O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978); *Note*, "The Constitutionality of *Seider v. Roth* after *Shaffer v. Heitner*", 78 Colum.L.Rev. 409 (1978). Fi-

such as this seemed inconsistent with the "institution" of judicial review.

"Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitute an indefensible departure from . . . [the] model of judicial review. . . . ."

"I continue to believe that a proper perception of our duties as a court of law, charged with applying the Constitution to resolve every legal dispute within our jurisdiction on direct review, mandates that we apply the law as it is at the time, not as it once was. Inquiry into the nature, purposes, and scope of a particular constitutional rule is essential to the task of deciding whether that rule should be made the law of the land. That inquiry is, however, quite simply irrelevant in deciding, once a rule has been adopted as part of our legal fabric, which cases then

pending in this Court should be governed by it."

*Mackey v. United States*, 401 U.S. at 679, 681, 91 S.Ct. at 1173, 1174 (Harlan, J., concurring). Nevertheless, courts continue to consider the retroactivity question, *see e. g., Kremer v. Chemical Construction Corp., supra*, and we are bound to apply the *Huson* factors.

**5.** Minnesota's *Seider*-type procedure was actually involved in *Rush*. New Hampshire follows *Seider* if the defendant resides in a "Seider jurisdiction". See *Camire v. Scieszka*, 116 N.H. 281, 358 A.2d 397 (1976); *Forbes v. Boynton*, 113 N.H. 617, 313 A.2d 129 (1973).

**6.** *Harris* had at one point been relied on in part by the New York Court of Appeals to uphold *Seider. See Simpson v. Loehmann*, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), rearg. denied, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968).

nally, we note that in reaching the conclusion that *Seider*-type attachments do not comport with due process, the Supreme Court relied on "existing authorities" and gave no indication that it was adopting a "radically new" standard for the exercise of state court jurisdiction. There was no "abrupt and fundamental shift" in *constitutional* doctrine such that "an entirely new rule . . . in effect replaced an older one". *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 498, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968). Rather, the development in the law of jurisdiction brought about by *Rush* was "based to a great extent on existing authorities and was an extension of doctrines which had been growing and developing over the years." *Id.* at 499, 88 S.Ct. at 2234.

While we believe that *Rush* does not overrule "clear past precedent" in the *Huson* sense, we find that the question is close enough to warrant careful consideration of the remaining *Huson* factors. *See Kremer v. Chemical Construction Corp., supra* ("unless the first factor is satisfied, there is no occasion to consider the other two."). New York plaintiffs in lawsuits filed prior to *Rush* may well have believed that they could rely on a *Seider*-type attachment as a constitutionally permissible basis of jurisdiction. *See Hanover Shoe v. United Shoe*, 392 U.S. at 499, 88 S.Ct. at 2234.

The second *Huson* factor involves an examination of the retroactivity problem in light of the purposes of the "rule" in question. In *Rush v. Savchuk, supra*, the Supreme Court applied the due process standard of *International Shoe* and *Shaffer* to an assertion of state court jurisdiction which violated that standard. The purpose of the *International Shoe* standard is to limit the exercise of state judicial power to situations where it is reasonable "in the context of our federal system of govern-

ment" and where the defendant has "certain minimum contacts with . . . [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ". 326 U.S. at p. 316–317, 66 S.Ct. at 158. There is no doubt that the court concluded in *Rush* that *Seider*-type attachments violate "traditional notions of fair play and substantial justice." Application of *Rush* to pending cases would "surely further rather than retard the operation of . . . [this] principle designed to" limit the exercise of state judicial power to constitutional bounds.[7] *See Kremer v. Chemical Construction Corp., supra*, at 790. Considering the purpose of the principles involved here, we see no reason why defendants in pending cases such as this one should continue to be subjected to an exercise of judicial power now determined to be in violation of the Constitution.

The third and final *Huson* factor focuses essentially on the "equities" or "fairness" of retroactive application. In *Huson* itself, the Supreme Court refused to apply its earlier holding in *Rodrique v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), which had applied a state statute of limitations, to cases pending at the time *Rodrique* was decided. *Chevron Oil Co. v. Huson*, 404 U.S. at 105–109, 92 S.Ct. at 354–356. A contrary finding would have barred a jurisdictionally sufficient claim by a plaintiff who could not have known at the time he initiated his suit of "the time limitation that the law imposed upon him." *Id.* at 108, 92 S.Ct. at 356. The consequences of applying *Rush* to pending cases, however, will be quite different.

In many cases, a plaintiff proceeding by way of a *Seider*-type attachment may well be able to reinstitute his suit before a court with constitutionally sufficient jurisdiction since a dismissal on jurisdictional grounds has no *res judicata* effect. In cases

---

7. Unlike those retroactivity cases involving modification of an exclusionary rule, *see e. g., Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the "rule" enunciated in *Rush* is intended solely to effect the conduct of judicial proceedings. Although arguments can certainly be made about the integ-

rity of the judicial process, *see* footnote 4, *supra*, a failure to apply a new exclusionary rule to pending cases would have only a limited effect on its larger purposes of deterrence. On the other hand, a failure to apply *Rush* to pending cases would seriously "retard its operation".

such as the one before us now as well as in *Rush* itself, however, a reinstitution of the suit will not be possible because plaintiff proceeded by way of a *Seider*-type attachment only *after* the statute of limitations had run in the most likely alternative forum.[8] In still other cases, the statute of limitations in the alternative forum will have run during the pendency of the *Seider*-based action. *See e. g., Gager v. White*, 428 N.Y.S.2d 808 (Sup.Ct., N.Y.Cty., 1980) (refusing to apply *Rush* retroactively in a case where the statute of limitations had run during the pendency of a *Seider*-based action). We are not faced with this latter situation,[9] and we conclude that *Rush* should be retroactively applied in pending cases where suit in an alternative forum will either still be possible after the *Seider*-type action is dismissed or was impossible when the *Seider*-type action was commenced. Plaintiffs in such cases whose claims are dismissed on jurisdictional grounds will suffer no "inequity" resulting from their reliance on *Seider* since the pendency of their *Seider*-type actions was not the cause of the running of a statute of limitations elsewhere.[10]

The applicability of *Rush* to pending cases notwithstanding, plaintiffs claim that the Court can exercise jurisdiction over Europlant in this case. Plaintiffs contend that an attachment of an insurer's obligations to a non-resident defendant is still a constitutionally sufficient basis for jurisdiction as long as there are "minimum contacts" be-tween the defendant and the forum state. (Transcript of oral argument, p. 8; Plaintiffs' Memorandum In Opposition, p. 2). The intracorporate relations between Johnson and Europlant, which *Saraceno* I held insufficient to satisfy the "doing business" test, are now said to supply the requisite minimum contacts. The Second Circuit's decision in *Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1020–1023 (2d Cir. 1978) is cited to support the propositions that: 1) the "contacts" required to establish "doing business" jurisdiction under N.Y.C.P.L.R. § 301 (McKinney's 1972) are more substantial than due process requires,[11] and 2) only the due process minimum is required to sustain jurisdiction by attachment pursuant to N.Y.C.P.L.R. §§ 6202, 5201, 314, 315 (McKinney's 1980, 1978, 1972). In *Intermeat*, jurisdiction over a non-resident defendant was based on the combination of: 1) an attachment of a debt owed to the defendant by a third party doing business in New York, and 2) the defendant's other forum contacts. Although the plaintiff's claims did not arise out of the property attached, the *Intermeat* court concluded that the claim before it arose out of the defendant's other forum contacts. 575 F.2d at 1023. *See also, Manna v. Freres*, 77 Civ. 839 (S.D.N.Y., May 17, 1979) (slip op.) (jurisdiction over non-resident corporation based on an attachment of a debt plus other forum contacts insufficient under either § 301 or § 302 but arguably related to plaintiff's claim); *Drexel Burnham Lambert, Inc. v. D'Angelo*, 453

---

**8.** The parties agree that plaintiffs filed this lawsuit after the running of the statute of limitations in Spain. Europlant has indicated, only in the context of its *forum non conveniens* motion, that it would be willing to waive the Spanish statute of limitations.

**9.** It is obviously in this last group of cases that the "inequity" to plaintiffs of a retroactive application is potentially the greatest. Nevertheless, considering all of the issues raised in connection with our discussion of the first two *Huson* factors, particularly the fairness and federalism values inherent in the minimum contacts concept of *International Shoe, see also, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980), we would, if faced with the question, apply *Rush* to all pending cases.

**10.** We note that all parties in this action have proceeded with an explicit awareness of the pendency of *Rush*. Indeed, at one point in the proceedings, consideration was given to holding this case in abeyance pending the *Rush* decision.

**11.** Plaintiffs contend that "a lesser interrelationship with an affiliated entity present in the forum may satisfy the constitutional standard of . . . minimum contacts" than is required under the " 'alter ego', 'instrumentality', or 'mere department' tests" employed in a "doing business" analysis. (Plaintiffs' Memorandum in Opposition, pp. 7–8). *See also, Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978).

F.Supp. 1294 (S.D.N.Y.1978) (same result in a case involving individual non-resident defendants). In our view, this case is distinguishable from *Intermeat,* and we hold that this Court cannot exercise jurisdiction over Europlant because of both the nature of the attachment involved and the insufficiency of the additional forum contacts.

■ The initial difficulty with applying *Intermeat*'s "attachment plus" concept to this case stems from the fact that unlike the plaintiff in *Intermeat,* plaintiffs here proceed by way of a *Seider*-type attachment. In *Intermeat,* the court apparently treated the property attached as one of the defendant's contacts with the state; only in *combination* with *that contact* were the defendant's other statutorily insufficient contacts an adequate jurisdictional base. 575 F.2d at 1022, ("the presence of the defendant's property within New York must be viewed as only one contact of the defendant with the state, to be considered along with other contacts. . . ."). In the wake of *Rush,* however, an insurer's obligation to defend and indemnify a non-resident defendant cannot be viewed as a "contact" at all. Although whether such an obligation is attachable property is purely a question of state law, *Rush* explicitly holds that such "property" is of "no jurisdictional significance" because, *inter alia,* it has no bearing on the relationship between the defendant and the forum state. 444 U.S. at 330, 100 S.Ct. at 578. The rationale underlying *Rush* thus seems to preclude the use of a *Seider*-type attachment in an "attachment plus" context.

■ Even if a *Seider*-type attachment could serve as a basis for "attachment plus"

jurisdiction in a case where the defendant's forum contacts satisfied due process, we find that the additional or "plus" contacts in this case are insufficient under *International Shoe* and insignificant when compared to those in *Intermeat* or other "attachment plus" cases.[12] The fact that a non-resident defendant is a subsidiary of a corporation doing business in New York does not necessarily mean, as a constitutional matter, that the defendant is subject to suit in New York. *See Rivera v. New Jersey Bell Telephone Company,* 340 F.Supp. 660, 662 (E.D.N.Y.1972). The thrust of a "minimum contacts" analysis is that the extent of a non-resident's contacts with a foreign forum determines the degree to which he is subjected to its jurisdiction. *See International Shoe Co. v. Washington,* 326 U.S. at 317–318, 66 S.Ct. at 158–159, 90 L.Ed. 95. When a defendant has substantial forum contacts, he may be subject to the forum state's jurisdiction even as to a suit arising from activities unrelated to the forum. When a defendant's forum contacts are less pervasive, a court must evaluate the relationship between his forum related activities and the specific cause of action at hand. *See e. g., H. Ray Baker, Inc. v. Associated Banking Corp.,* 592 F.2d 550, 552 (9th Cir. 1979); *Fosen v. United Technologies Corp.,* 484 F.Supp. 490, 498 (S.D.N.Y. 1980). The relative significance of "contacts" such as the "presence" of a parent company in the forum state is thus dependent upon the facts of each given case. *See Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483 (D.Kan.1978).[13]

■■ In *Saraceno* I, we were not called upon to determine whether Europlant's fo-

12. The additional forum contacts pointed to by the Court in *Intermeat* were a contract which had "substantial connections" with New York, the defendant's repeated consent to arbitration in New York, and the defendant's continuous involvement in the commerce of New York, *i. e.,* "that the volume of defendant's business with New York companies amounted to as much as seven million dollars a year, and that 25 to 30% of the defendant's imported meat business . . . [was] with New York importers." 575 F.2d at 1019. On the other hand, as we noted in *Saraceno* I, "Europlant itself has no contact with New York; it does

not sell its products in New York nor does it have an office, telephone listing or authorized agent in New York." Although Europlant "used nine suppliers in New York for invoiced goods ranging in price from $24. to $3,400, . . . these suppliers represent less than one-fifth of one percent of Europlant's suppliers by number and less than one-fiftieth of one percent by amount." 83 F.R.D. at 67.

13. In *Energy Reserves,* a case upon which plaintiffs place great reliance, the Court held that a subsidiary had transacted business in the forum state (Kansas) through the actions of its

rum contacts were sufficient to satisfy due process. Indeed, we explicitly refrained from ruling on that issue. 83 F.R.D. at n.13. Now that we are faced with the question, however, we find that the contacts between Europlant, New York and this litigation are insufficient under *International Shoe* to support the jurisdiction here asserted. While we agree that "the nature as well as the weight of the required showing is different under the constitutional standard of *International Shoe*" than it is under the doing business test, there is no evidence in this case that Europlant, either on its own or through Johnson, "purposefully avails itself of the privilege of conducting activities" in New York. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Plaintiffs have failed to demonstrate a relationship between this forum and their cause of action. Europlant's "Raid" is a completely European product, although Johnson apparently "reimbursed" Europlant's research and development expenses. Other research and development assistance, *e. g.,* testing and evaluation, was, plaintiffs contend, provided "directly" by Johnson corporate headquarters in Racine, Wisconsin. Europlant has no offices or employees in New York, owns no property in New York, pays no taxes in New York, and does no banking in New York. Europlant does not advertise in New York and would have no reason to do so if Johnson did not. Europlant sells nothing in New York either directly or indirectly, and its purchases in the state are insignificant.[14]

The motion to vacate the attachment dated June 26, 1979 is granted and the complaint against Europlant is dismissed. We turn next to Johnson's motion to dismiss on the ground of *forum non conveniens.*

## II. *Johnson's Motion to Dismiss for Forum Non Conveniens.*

Although we recognize that the *forum non conveniens* question in this case is a "close" one, after engaging in the inquiry required by *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Alcoa Steamship Company, Inc. v. M/V Nordic Regent,* 78–7054 (2d Cir. February 25, 1980) (slip op.), we conclude that this is not one of those "rare" instances in which a plaintiff's choice of forum should be disturbed.

Plaintiffs are New York domiciliaries who were in Spain at the time of the accident in connection with their employment as teachers by the State of New York. While the citizenship of the plaintiffs is not dispositive, it remains a valid consideration. Moreover, unlike *Alcoa,* this is not a case where it can be said with certainty that all of the operative facts affecting liability, causation and damages occurred in the foreign jurisdiction. With respect to at least some of the issues in this case, particularly Johnson's responsibility for research and development of the product, events relied upon by plaintiffs are alleged to have occurred in this country. Plaintiffs also assert that the voluminous documentation relevant to those events is all in English. With regard to the availability of witnesses, plaintiffs assert that:

> "Three of the four relevant witnesses who first found Mrs. Saraceno, revived her and sent her to the hospital on April 20, 1976 are American citizens. These Americans are the Saracenos' two eldest children and Mr. Bernard Schutzman. The children are, of course, subject to process both for deposition and trial, and Mr. Schutzman will return to his native New York this summer to work at a Veterans Administration Hospital. The fourth such witness is a close acquaintance of the Saracenos and is believed willing to appear either in Spain or the United States. In addition, there are seven additional witnesses to the short-

parent, and explicitly found that one of the contracts out of which the suit arose had been entered into in Kansas by the parent's officers on behalf of both the parent and the subsidiary. 460 F.Supp. at 490, 494.

14. *See* note 12, *supra.*

term effects of the accident, five American citizens and two Spanish nationals. Three of the five Americans are now in New York, and all remaining Spanish residents, including both American and Spanish citizens, are believed to be willing witnesses. Affidavit of Louis Saraceno, sworn to March 21, 1980, ¶¶ 10–12. Thus, eight of the eleven major lay witnesses, including three of the four who first attended her immediately after the accident, are within the reach of this Court's compulsory process by virtue of their American citizenship. 28 U.S.C. § 1783."

(Plaintiffs' Memorandum In Opposition, p. 26).

In reaching our conclusion, we are mindful of Johnson's contention that a trial in New York will make it impossible for Johnson to prove its "causation" defense, i. e., that Mrs. Saraceno's injuries resulted from a gas leak originating outside her apartment in Spain rather than from inhalation of the "Raid". (Supplemental Reply Memorandum of Defendant S. C. Johnson and Son, Inc., p. 2). Since there is no dispute at this point that a gas leak occurred, however, we agree with plaintiffs' contention that the primary evidence with respect to Johnson's causation defense will be Mrs. Saraceno's blood test results and other Spanish hospital records for the period following the accident. (Transcript of Oral Argument, pp. 28–30). Plaintiffs' counsel has represented to the Court that those records are "on the way here" and that they will be made available to Johnson. Insofar as any other evidence relating to Johnson's causation defense is concerned, we note that by means of letters rogatory or other procedures not too dissimilar from those which would be utilized by a Spanish court were the case tried under the civil law procedures of that country, the necessary evidence can be accumulated and presented at trial here.

Johnson's motion is denied.