Peter **KILVERT** and Jenny **Kilvert**, Personal Representatives of The Estate of Alice Kilvert, Plaintiffs,

v.

**TAMBRANDS INC.**, Defendant.

No. 94 Civ. 8556.

United States District Court, S.D. New York.

Dec. 8, 1995.

Goodkind Labaton Rudoff & Sucharow (Martis Ann Brachtl, of counsel), New York City, Michaud, Hutton, Fischer & Anderson (Andrew W. Hutton, Mark B. Hutton, of counsel), Wichita, KS, The Perkins Law Firm (Robert J. Perkins, of counsel), Kansas City, MO, for plaintiffs.

Debevoise & Plimpton (Roger E. Podesta, Anne E. Cohen, Mary Beth Hogan, of counsel), New York City, for defendant.

SAND, District Judge.

This product liability action arises from the death of Alice Kilvert, the fifteen-year old daughter of plaintiffs Peter Kilvert and Jennifer Hilary Kilvert ("the Kilverts"), Personal Representatives of the Estate of Alice Kilvert, from Toxic Shock Syndrome ("TSS"). At the time of her death, plaintiffs' decedent was using a Tampax Super Absorbency tampon, designed and tested by defendant Tambrands Inc. ("Tambrands"). Plaintiffs allege that the use of viscose rayon, instead of all-cotton, in the tampon product contributed to the development of the fatal TSS.

Defendant has moved for dismissal of this action on the ground of *forum non conveniens*. Plaintiffs are citizens of the United Kingdom, as was Alice Kilvert, whose use of defendant's product and whose death both occurred in England. The tampon product used by Alice Kilvert was designed and tested by Tambrands in the United States, but was manufactured, marketed, and sold in the United Kingdom by Tambrands Limited, a wholly-owned English subsidiary of Tambrands. Defendants maintain that England is a more convenient and fully adequate alternative forum for this litigation. Plaintiffs, however, argue that they are financially unable to prosecute their claims in England and that England is thus, effectively, an inadequate forum.

After considering the arguments of the parties, raised both in the papers and at oral argument on September 28, 1995, the Court grants the motion on the conditions agreed to by Tambrands, namely that (1) Tambrands will subject itself to jurisdiction in England, (2) Tambrands will waive the statute of limitations, (3) Tambrands will provide access to sources of proof within its control, and (4) Tambrands will make witnesses in its employ available in England and at its expense.

## BACKGROUND

Plaintiffs commenced this product liability action on November 23, 1994. The Kilverts are citizens of the United Kingdom. Defendant Tambrands Inc. is a Delaware corporation with its principal place of business in New York.

Plaintiffs' decedent, Alice Kilvert, a British citizen, died in England on November 26, 1991, as a result of TSS. At the time of her death, Alice Kilvert was using, in England, a Tampax Super Absorbency tampon, designed and tested by defendant in the United States and manufactured, marketed, and sold by Tambrands Limited, defendant's wholly-owned English subsidiary, in the United Kingdom. Tambrands Limited is incorporated under English law and has corporate offices in Woking, England. It conducts business solely in the United Kingdom.

The tampon products used by plaintiffs' decedent contained viscose-rayon rather than all-cotton fibers. Plaintiffs allege that viscose rayon increases the production of a toxin known as Toxic Shock Syndrome Toxin–1 ("TSST–1") in menstruating women who carry staphylococcus aureus in their vaginal cavity during menstruation. Thus, plaintiffs claim that defendant's product played a contributing role in the development of the fatal TSS in Alice Kilvert. Plaintiffs further allege that defendant knew that all-cotton, as opposed to viscose-rayon, fiber tampons were the safest tampon product that could be manufactured. The Kilverts also claim that defendant knowingly caused to be published, in England, through its agent, the Association of Sanitary Manufacturers, fraudulent misrepresentations about the dangerous propensities of its English, viscose-rayon product.

It is undisputed that defendant's English subsidiary, Tambrands Limited, had sole responsibility for the manufacturing, marketing, and distribution of all Tampax tampons sold in England at the time of Alice Kilvert's death. Its responsibilities in this regard included developing the usage instructions and TSS warnings on all Tampax tampon packages sold in the United Kingdom and all Tampax print and media advertising that appeared in the United Kingdom. In their Complaint, dated November 23, 1994, plaintiffs originally named Tambrands Limited as a defendant. However, as inclusion of the British company defeated diversity jurisdiction under 28 U.S.C. § 1332 (1993), plaintiffs subsequently amended their Complaint to name Tambrands Inc. as the sole defendant. *See* First Amended Complaint, March 2, 1995 ("Amended Complaint").

The Amended Complaint lists six Claims for Relief: (1) fraud and deceit, based on defendant's knowing misrepresentations and omissions; (2) negligent misrepresentation; (3) intentional infliction of emotional distress; (4) negligence, for breach of defendant's duties both to provide a reasonably safe product and to warn of existing dangers; (5) strict liability, for design, manufacture, and sale; and (6) breach of implied warranty, arising from defendant's manufacturing and marketing.

Defendant has moved this Court for dismissal of the First Amended Complaint on the ground of *forum non conveniens*, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). Tambrands maintains that England is an adequate and more appropriate alternative forum for this litigation. Defendant has agreed to (1) subject itself to jurisdiction in England, (2) waive any statute-of-limitations claims, (3) provide access to sources of proof within its control, including documents located in New York and Massachusetts, Memorandum of Defendant Tambrands Inc. in Support of its Motion to Dismiss the Amended Complaint at 17; Schlesinger Aff. ¶ 8; Reply Memorandum of Defendant Tambrands Inc. in Support of its Motion to Dismiss the Amended Complaint at 21, and (4) make witnesses in its employ available to plaintiffs for deposition and trial in England at defendant's expense, Transcript of September 28, 1995, Oral Argument at 2 ("Tr. of Oral Arg."). However, plaintiffs, whose income is too high to qualify them for legal aid in Britain, claim that they are financially unable to pursue a law suit in England, Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint on Grounds of Forum Non Conveniens at 3–4 ("Pls.' Oppos."); Pls.' Exhs. 7 ¶ 2(b) (Peter Kilvert Aff.), 8 ¶ 2(b) (Jennifer Hilary Kilvert Aff.), and that, practically speaking,

England is thus an inadequate alternative forum.

Specifically, the Kilverts have provided the following details of their financial status.[1] Peter Kilvert's annual after-tax income totals pounds sterling 15,240. The annual after-tax retirement income of Jennifer Kilvert amounts to pounds sterling 8,000. Their assets include a house valued at pounds sterling 100,000, which secures total mortgage indebtedness of pounds sterling 25,000, an automobile on which annual payments are owed, and two bank accounts, each containing pounds sterling 10,000, representing the lump-sum retirement payment to Jennifer Kilvert of pounds sterling 20,000. Their estimated annual expenses, which includes mortgage and automobile payments, electricity, gas, insurance, telephone, support for their son in college, food, clothing, and other miscellaneous expenditures, total pounds sterling 18,000.

The Kilverts claim that their financial position does not enable them to meet the costs of trial in England. They cite in particular (1) the expense of retaining counsel; (2) the associated costs of litigation, estimated potentially to total pounds sterling 30,000, *see* Gadsby Aff. ¶ 8 (pounds sterling 20,000–30,000); *cf.* Pls.' Oppos. at 3; Pls.' Exh. 7 ¶ 2(a) (Peter Kilvert Aff.) (costs and fees together would exceed pounds sterling 60,000 or $90,000); Pls.' Exh. 8 ¶ 2(a) (Jennifer Hilary Kilvert Aff.) (same); Hutton Aff. ¶¶ 1, 3 (Gadsby's estimate too low; associated trial costs would total $85,000–$165,000); Perkins Aff. ¶¶ 1, 3 (same); *but see* Podesta Letter of December 5, 1995, at 1 (estimates by Hutton and Perkins fail to consider Tambrands' willingness to provide documents, witnesses, and other discovery to plaintiffs and are thus inflated and inaccurate); (3) the possible expense of their adversary's legal costs, should plaintiffs not prevail in their British suit.

Until recently, English law did not provide for an equivalent to the contingent-fee system prevalent in the United States, whereby an attorney acting for a plaintiff in a personal injury case may agree to charge no fee if the claim is unsuccessful and to collect a percentage of the ultimate award, should the plaintiff prevail. Indeed, plaintiffs initially contended that contingent-fee arrangements were entirely unavailable in England. Pls.' Oppos. at 3–4; Tr. of Oral Arg. at 2. However, in July 1995 the British Parliament authorized conditional-fee arrangements, providing for legal payment similar to that under the American contingent-fee system. Nonetheless, although English law now affords potential plaintiffs the chance, heretofore foreclosed to them, of prosecuting meritorious claims without paying a retainer at the outset of litigation, the new system may not relieve plaintiffs here. The Kilverts have submitted their case to at least one attorney in England for review. This solicitor, Gillian Mary Gadsby, a partner in the firm of Gadsby and Wicks, experienced in tampon-induced toxic shock litigation, states that "[h]aving reviewed the facts of this case with the Kilverts, I am not willing to act in relation to this case under a conditional fee arrangement." Gadsby Aff., September 28, 1995, ¶ 8. Ms. Gadsby further affirms that, to the best of her knowledge, she is "not aware of any other lawyers in England or Wales who would be willing so to act in this or any similar case." *Id.* Nor is Ms. Gadsby aware of any other attorney who, even if willing to undertake the Kilverts' case under the new fee system, would be prepared to advance the related expenses of trial. *Id.* By contrast, the Kilverts' American counsel, Robert J. Perkins, Esq., and Mark B. Hutton, Esq.,

---

1. This detailed information was not proffered in the plaintiffs' responsive papers or supporting affidavits, which included only broad declarations of the Kilverts' inability to afford litigation in England. Pls.' Oppos. at 3–4; Pls.' Exhs. 7 ¶ 2(b) (Peter Kilvert Aff.); 8 ¶ 2(b) (Jennifer Hilary Kilvert Aff.). Plaintiffs claimed generally, on September 14, 1995, "[t]hat affiant[s] could not afford to pay such hourly fees and costs necessary to undertake such a lawsuit, thereby effectively precluding affiant[s] from bringing an action in the United Kingdom based upon projected costs, including expenses, provided to affiant[s] by English solicitors...." Pls.' Exhs. 7 ¶ 2(b) (Peter Kilvert Aff.); 8 ¶ 2(b) (Jennifer Hilary Kilvert Aff.). Plaintiffs furnished the more specific details of their economic position on December 4, 1995, *see* Financial Disclosure of Peter and Jennifer Hilary Kilvert at 1, in response to a request by the Court, *see* Transcript of November 29, 1995, Telephone Conference.

are employed by plaintiffs on a contingent-fee basis. *See* Pls.' Oppos. at 4; Pls.' Exhs. 7 ¶ 4 (Peter Kilvert Aff.); 8 ¶ 4 (Jennifer Hilary Kilvert Aff.).

The new conditional-fee arrangements do not alter the existing and longstanding requirement under English law that the losing party pay most of the victor's legal costs. Gadsby Aff. ¶ 6. Thus, although conditional fees may help a potential plaintiff to secure an attorney, the system does not ease the burden shouldered by an unsuccessful plaintiff to finance the defendant's attorney's fees and costs. To address this discrepancy, insurance protection is available in England to provide coverage in the form of the winning party's costs. Two such insurance policies, the Accident Line Protect policy and the Litigation Protection Limited policy, have declined to insure the Kilverts in this matter, and plaintiffs profess their inability to secure other coverage. *See* Gottlieb Letter of November 21, 1995, at 1; Napier Aff. ¶ 10. The Kilverts thus maintain that they are financially barred from bringing their suit in England.

In response, defendant has offered, if, but only if, the Court should deem it necessary, to forego its right to attorney's fees, should Tambrands prevail in England.[2] Transcript of November 29, 1995, Telephone Conference; Gottlieb Letter of November 27, 1995, at 1 ("[S]hould the Court find that dismissal is inappropriate on the ground that plaintiffs will potentially be responsible for defendant's legal expenses, Tambrands Inc. would be willing to waive recovery of such costs in the event it prevails on the merits of an English action.").

## DISCUSSION

■ The *forum non conveniens* doctrine is valued for its flexibility and close attention to the specific facts of each case. *See Williams v. Green Bay & Western R.R. Co.*, 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946) ("Each case turns on its facts."). The

Supreme Court has stressed "the need to retain [this] flexibility" and has consistently refused to "lay down a rigid rule to govern discretion...." *Piper Aircraft v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981). The decision to dismiss on grounds of *forum non conveniens* is within the sound discretion of the district court, after careful consideration and balancing of all pertinent public and private interest factors. *Id.* at 257, 102 S.Ct. at 266.

■ Given the many ties that, on the face of the Amended Complaint, link this action to England, we conclude that England, not the United States, has the stronger public interest in the resolution of this matter. In the Amended Complaint, plaintiffs list six claims for relief, only one of which directly involves the named defendant and the United States. That claim—the Kilverts' fifth Claim for Relief—is one of strict liability, based on the design, manufacture, and sale of the allegedly defective product. It is only the design, not the manufacture and sale, of the Super Absorbent tampon that took place in the United States, and it is only with respect to the design of the tampon that Tambrands exercised any direct control.

■ Plaintiffs claim that as the parent of Tambrands Limited, which was the company responsible for the manufacturing, marketing, labelling, and distribution of the tampon product in England, defendant controlled and directed the acts of its English subsidiary. However, the record reveals no evidence of such control. Plaintiffs base their contention on the fact that various officer and director positions in Tambrands and Tambrands Limited are held by the same individuals. While evidence of *some* type of relationship between the two companies, such as that of parent and wholly-owned subsidiary, a mere overlap in management does not reflect corporate dominance sufficient to infer Tambrands' direct control over all acts of its subsidiary. Without more, concurrent man-

**2.** Although *Tambrands Limited* is beyond the jurisdiction of this Court, making it impossible for us to obtain its waiver of a right to collect fees if successful, plaintiffs would not be responsible for Tambrands Limited's attorney's fees if the defendant were to choose to implead its subsidiary.

Only if the Kilverts were affirmatively to act against Tambrands Limited, by asserting first-party claims against it, would they be responsible, as plaintiffs, for Tambrands Limited's legal costs.

agement alone does not give rise to the conclusion that, "in a practical sense, . . . every act of defendant's subsidiary, Tambrands Ltd.—including the design, manufacture, packaging and sale of the Tampax tampons at issue—was controlled and/or approved by defendant, Tambrands Inc." Pls.' Oppos. at 24–25.

Thus, without evidence of corporate dominance sufficient to infer control by defendant over the acts of its subsidiary in England, we conclude that the majority of plaintiffs' claims do not directly involve the United States and that, consequently, England has the stronger nexus to this action. The product was manufactured in the United Kingdom by a British company. All advertisements and information concerning the tampons were created in England. The language in the warnings, which appeared on the packaging, was crafted in England. The tampons were sold in England, which is where plaintiffs' decedent purchased and used them. Alice Kilvert, a British citizen, became ill and died in England. The Kilverts are citizens of the United Kingdom.

The only tie this district has is that New York is the corporate headquarters of the company that tested and designed the tampon product, at its plant in Massachusetts. However, defendant has agreed to make relevant documents and witnesses within its control available to plaintiffs in England and at its expense, were the action to be dismissed. On balance, then, England's public interest in the resolution of this litigation plainly outweighs that of the United States, while the willingness of of defendant to produce documentary and testamentary proof minimizes any potential inconvenience to plaintiffs.

█ Examining as well the relevant private factors, we are particularly troubled by defendant's inability to implead Tambrands Limited, over whom this Court lacks personal jurisdiction. Where a parent company is subject to a court's personal jurisdiction, the parent/subsidiary relationship, without more, does not confer jurisdiction over the subsidiary. *Golden Gulf Corp. v. Jordache Enters., Inc.*, No. 91 Civ. 8506 (LAP), 1994 WL 62384 at *3 (S.D.N.Y. Feb. 24, 1994); *Schenck v.*

*Walt Disney Co.*, 742 F.Supp. 838, 842 (S.D.N.Y.1990); *Jayne v. Royal Jordanian Airlines*, 502 F.Supp. 848 (S.D.N.Y.1980); *Saraceno v. S.C. Johnson and Son, Inc.* ("*Saraceno II*"), 492 F.Supp. 979, 986 (S.D.N.Y.1980); *Saraceno v. S.C. Johnson and Son, Inc.* ("*Saraceno I*"), 83 F.R.D. 65, 67 (S.D.N.Y.1979) (no jurisdiction "even if the parent is the sole shareholder of the subsidiary."). Only when the control exercised by the parent over the subsidiary is so complete that the subsidiary is a "mere department" of the parent or when an agency relationship exists is there automatic jurisdiction over the subsidiary. *See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1046 (2d Cir. 1990); *Golden Gulf*, 1994 WL at *3; *Palmieri v. Estefan*, 793 F.Supp. 1182, 1193 (S.D.N.Y.1992); *Jayne*, 502 F.Supp. at 859; *Saraceno I*, 83 F.R.D. at 67.

As regards Tambrands and its English subsidiary, plaintiffs have presented no evidence that the parent/subsidiary relationship between the two companies is anything but independent and separate. In the absence of such a showing, the Court must evaluate Tambrands Limited's independent forum contacts. *Saraceno II*, 492 F.Supp. at 986. The record reveals no basis for personal jurisdiction over Tambrands Limited.

With the company that manufactured, marketed, labelled, and sold the tampon product beyond the jurisdictional reach of this Court, Tambrands is unable to implead Tambrands Limited as a third-party defendant. However, Tambrands would plainly have claims against its English subsidiary for any relief that the Kilverts may secure. Indeed, the Kilverts themselves originally named Tambrands Limited as a defendant in this action. "The inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction in the Southern District of New York." *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976); *see Piper Aircraft*, 454 U.S. at 259, 102 S.Ct. at 267; *American Special Risk Ins. Co. v. Delta Am. Re Ins. Co.*, 634 F.Supp. 112, 118 (S.D.N.Y.1986); *American Home*

*Assurance Co. v. Insurance Corp. of Ireland Ltd.,* 603 F.Supp. 636, 641, 641 n. 5 (S.D.N.Y. 1984). A defendant's inability to implead other direct tortfeasors has been held to constitute "clear prejudice" and thus to point strongly in favor of dismissal. *Fitzgerald,* 521 F.2d at 453. Specifically, when an action involves foreign plaintiffs, as here, the argument for dismissal is even stronger. *American Home Assurance,* 603 F.Supp. at 641 n. 5 (citing cases with foreign plaintiffs and likely third-party defendants that were dismissed on *forum non conveniens* grounds).

Even in *Carlenstolpe v. Merck & Co., Inc.,* 638 F.Supp. 901 (S.D.N.Y.1986), on which plaintiffs heavily rely, then-Chief Judge Motley explicitly noted the absence of any concern on the part of the defendant to implead other parties. *Id.* at 906. "Accordingly, the amenability of such parties to this court's jurisdiction and the possible prejudice to defendant if they could not be joined in the law suit has no relevance to the appropriateness of plaintiff's chosen forum here." *Id.* Unlike the defendant in *Carlenstolpe,* Tambrands *has* raised concerns about its inability to implead Tambrands Limited. Although Tambrands could bring a separate claim for contribution against Tambrands Limited in England, it is plainly more efficient for all claims to be tried together in a single action. *See Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. at 267. This Court's lack of jurisdiction over a party directly involved in the production and distribution of the allegedly defective tampon product is a factor strongly favoring dismissal.

Plaintiffs raise several arguments against dismissal. The Kilverts stress that (1) it was they who selected the forum; (2) New York is defendant's home forum; (3) New York and Massachusetts are the sites of all the tortious acts; (4) under choice-of-law analysis, New York law applies; (5) New York has a strong public interest in the resolution of this matter; and (6) practically speaking, England is not a true alternative forum as

the Kilverts are financially unable to afford the costs of litigating in England.

■ Plaintiffs' most compelling argument and the only argument that requires detailed discussion is their professed financial inability to sue in England. They maintain that as the newly enacted conditional-fee system is not intended for complex cases, Gadsby Aff. ¶ 5, and as British law requires that the losing party pay the victor's attorney fees, the Kilverts, who earn too much to qualify for public legal assistance, are effectively barred from prosecuting their claims in England.

We are not prepared here to speculate as to the precise parameters of the newly enacted conditional-fee arrangement provisions. They certainly appear to offer a satisfactory solution to the problems of financially strapped tort plaintiffs. Although the refusal of an experienced toxic-shock-litigation attorney[3] to handle the matter under the conditional-fee system, *after having reviewed the facts of this case,* Gadsby Aff. ¶ 8, naturally troubles plaintiffs, we are not convinced that this refusal warrants our discounting all the possibilities offered by the new conditional-fee arrangements. It certainly does not demonstrate, as plaintiffs suggest, the inadequacy of England as an alternative forum for this action.[4]

Of greater concern to the Court is plaintiffs' professed inability to afford Tambrands' legal fees, should the Kilverts not prevail in England. American courts, however, dealing with this so-called "English Rule"—the requirement that in England the losing party reimburse his adversary for attorney's fees and other costs—in the context of *forum non conveniens* have not afforded it much weight in the balance.

Although no court in this district has treated the precise issue, other courts have "reject[ed] plaintiffs' contention that, should foreign laws require advancement of funds by a

---

3. Ms. Gadsby affirms that, to the best of her knowledge, she is the only "solicitor in England and Wales who has experience in litigating tampon-induced toxic shock cases." Gadsby Aff. ¶ 8.

4. On the contrary, a rejection of *this particular case,* as opposed to a blanket refusal to undertake, for instance, *all* product liability actions, seems instead to suggest that the conditional-fee system does not, as plaintiffs contend, automatically exclude their claims.

litigant not necessary in the United States, the foreign court must be deemed an inadequate forum...." *Nai–Chao v. Boeing Co.,* 555 F.Supp. 9, 16 (N.D.Cal.1982) (citing, *inter alia, Dobson v. Amoco (U.K.) Exploration Co.,* No. 78–C–2203 (N.D.Ill. Mar. 21, 1979), mem. op. at 5 (" 'Plaintiffs also argue that they should be allowed to escape the English practice of charging attorneys fees and costs to the losing party.... [W]e can see no reason why this action, which has every connection with England and none with the United States, should be brought here simply to except it from rules which ordinarily govern English lawsuits.' ")). Similarly dismissing and remitting the relevant parts of the action to England, another district court has noted that "[t]he potential for taxation of attorney's fees against the losing party is a two-way street: though a risk to a plaintiff who loses, it also provides a means for successful plaintiffs to recoup their attorney's fees." *In re Silicone Breast Implants Prods. Liab. Litig.,* 887 F.Supp. 1469, 1476 (N.D.Ala.1995).

The conclusion that England's longstanding rule regarding the imposed payment of legal costs renders England an inadequate alternative forum is particularly unconvincing on the facts here presented. The Kilverts receive a steady annual income stream and possess an automobile, two liquid bank accounts, and a house whose present value comfortably exceeds the outstanding balance of the single mortgage to which it is subject. We conclude that the risk of having to assume defendant's legal expenses does not here constitute an effective obstacle to the Kilverts' initiating suit in England.

A recent decision of this court provides an illuminating precedent. *See Murray v. British Broadcasting Corp.,* 906 F.Supp. 858 (S.D.N.Y.1995) (involving similar issues to those before us here, specifically the economic unsuitability of England as an alternative forum). Although addressing the issue in the context of the then-unavailability in England of contingent fees, Judge Stanton articulated much of relevance in the attorney-fee context as well. In *Murray* the court dismissed the action, in the face of claims by the plaintiff of financial hardship were litigation to be conducted in England. The court found dispositive the fact that the plaintiff owned a successful business, an automobile, and an apartment valued at pounds sterling 110,000, subject to a mortgage of pounds sterling 100,855, and reported a before-tax annual income for the three preceding years of pounds sterling 46,066, 57,515, and 45,000. Murray's estimated legal fees, for which at that time there was no conditional-fee system available, totalled pounds sterling 100,000–150,000.

Carefully examining cases wherein courts refused dismissal on the ground of undue financial burden, Judge Stanton found that "[w]hen a court denies a forum non conveniens motion because the plaintiff can not afford to litigate in the alternative forum, the plaintiff generally has a much lower income and fewer assets than Murray." *Id.* 906 F.Supp. at 864. In particular, the court cited cases whose plaintiffs had sizable medical bills, short-term health insurance, and assets of less than $50 or had no income stream, no possibility of future income, and were wholly dependent on others for financial support and lodging. *Id.* (citing respectively *McKrell v. Penta Hotels,* 703 F.Supp. 13 (S.D.N.Y. 1989) and *Fiorenza v. United States Steel Int'l,* 311 F.Supp. 117 (S.D.N.Y.1969)).

By contrast, the Kilverts have not demonstrated similarly extreme and dire financial hardship. The Kilverts seem at least as financially secure as Murray; in particular, the Kilverts' house, whose equity value totals pounds sterling 75,000, represents an asset of significant worth. Thus, we find that, as in *Murray,* "[t]he information [the Kilverts] ha[ve] provided suggests that although [they] do[ ] not have liquid assets sufficient to cover the expenses [they] expect[ ] to incur litigating in England, [they are] not of such limited means [as to be prevented] from pursuing [their] claim ..." in England. *Id.*

■ The Court therefore concludes that plaintiffs have not made a sufficient showing of financial hardship to warrant a determination that England is an inadequate alterna-

tive forum for this action.[5] Nor have the Kilverts shown to the Court's satisfaction that dismissal is proper only upon defendant's waiving all right to legal costs were Tambrands to prevail in England. *See, e.g., Abouchalache v. Hilton Int'l Co.,* 464 F.Supp. 94, 99 (S.D.N.Y.1978), *aff'd sub nom. Collins v. Hilton Int'l Co.,* 628 F.2d 1344 (2d Cir. 1980) (dismissal conditioned upon defendants' waiving any claims for costs and legal fees should they prevail in their English litigation).

## CONCLUSION

Given (1) the strong nexus to England; (2) defendant's inability to implead Tambrands Limited; (3) defendant's willingness to subject itself to jurisdiction in England, to waive the statute of limitations, to provide access to sources of proof within its control, and to make its witnesses available to plaintiffs in England and at defendant's expense; and (4) the absence of compelling countervailing reasons for keeping the action in the United States, the Court concludes that England is a more convenient and sufficiently adequate forum for this litigation.

The Court thereby dismisses this action on the ground of *forum non conveniens,* subject to the conditions accepted by Tambrands: (1) that Tambrands will subject itself to jurisdiction in England, (2) that Tambrands will waive the statute of limitations, (3) that Tambrands will provide access to sources of proof within its control, and (4) that Tambrands will make witnesses in its employ available in England and at its cost.

Motion granted.

SO ORDERED.

---

**5.** The mere fact that litigation in England may be more costly than in the United States (*e.g.* because in England a litigant must retain both solicitors and barristers) does not in and of itself render England an unavailable forum.