Eric CARLENSTOLPE, Plaintiff,

v.

MERCK & CO., INC., Defendant.

No. 85 CIV. 10056.

United States District Court,
S.D. New York.

June 27, 1986.

Kreindler & Kreindler by Paul S. Edelman, New York City (Koritz & Fuller by David Otis Fuller, New York City, of counsel), for plaintiff.

Shanely & Fisher, P.C. (James M. Altieri, Thomas F. Campion, of counsel), New York City, for defendant.

## OPINION

MOTLEY, Chief Judge.

Plaintiff Eric Carlenstolpe is a Swedish resident and citizen who suffered serious injury in the form of disabling arthritis after he received two doses of a hepatitis vaccine, HB–Vax, that had been developed, tested, and manufactured by defendant in the United States. Plaintiff, who is an opera singer, had been injected with the vaccine in Sweden while he was working part-time as a medical laboratory assistant. The vaccine, which had been approved by the Swedish government, was administered to plaintiff pursuant to defendant's marketing recommendation that laboratory and hospital personnel working with blood plasma become the first recipients of the product.

Defendant, a New Jersey corporation, developed and produced the HB–Vax vaccine at issue in this case through its subsidiary, Merck, Sharp & Dohme, located in West Point, Pennsylvania. The vaccine had been approved for use in the United States by the Food and Drug Administration and has been marketed in this country for several years.

In Sweden, the importation and distribution of the vaccine were handled by defendant's Swedish subsidiary and by Swedish government agencies. Merck, Sharp & Dohme (Sweden) A.B., was responsible for importing and selling the drug to the Swedish government. Thereupon, the vaccine was licensed and distributed by Swedish government agencies who in arriving at their licensing and distribution decisions relied on the information provided by defendant American drug company. This information about the vaccine was essentially the same information that defendant had supplied to the FDA in Washington for United States approval of the product. The Swedish government agencies were responsible as well for furnishing warnings and descriptive information regarding the vaccine, also based on American produced information that had been provided by defendant. No independent testing or evaluation of the drug was performed in Sweden either by defendant's Swedish subsidiary or by the Swedish government agencies.

Defendant, which describes itself as "a worldwide organization engaged primarily in the business of discovering, developing, producing, and marketing human and animal health products," has now moved for dismissal on the ground of *forum non conveniens.* There is no dispute that this court has jurisdiction over defendant personally and over the subject matter of this lawsuit in diversity. Defendant argues, however, that an alternative Swedish forum is more appropriate than plaintiff's chosen New York forum. According to defendant, Sweden's strong interest in the outcome of this litigation, as well as the presence there of certain evidence necessary to defendant's case, makes the Swedish forum more convenient and just to all concerned. Plaintiff counters that no good reason exists for a *forum non conveniens* dismissal because the crucial evidence in this case is located in Pennsylvania and New Jersey, both convenient to New York. Plaintiff also asserts that dismissal would be improper because the generally unfavorable Swedish law for persons such as plaintiff makes defendant's proposed alternative forum a less than adequate one.

This court recognizes that Sweden unquestionably has some interest in this litigation and also that a certain amount of evidence necessary to the pursuit of this lawsuit is located in that country. This is not enough to invoke the drastic measure of dismissal for *forum non conveniens,* however, because under the well-established principles of the doctrine as set forth by the Supreme Court, defendant has not convinced this court that plaintiff's chosen forum is itself so inconvenient and unrelated to the subject matter of this litigation that trial in *this* forum would be adverse to the best interests of justice. Thus, for the reasons that follow, defendant's motion is denied.

DISCUSSION

The central concern in a *forum non conveniens* inquiry is whether the inconvenience of plaintiff's chosen forum in terms both of the private and public interests implicated by the particular litigation is so great as to recommend dismissal, notwithstanding the fact that jurisdiction itself is proper, and notwithstanding too, the deference ordinarily given to plaintiff's forum choice. The decision of whether to dismiss on *forum non conveniens* grounds is within the sound discretion of the district court, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981), and must be made by applying to the particular facts of the case the various public and private interest factors that have been enunciated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 65 S.Ct. 839, 91 L.Ed. 1055 (1947), and most recently affirmed in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1982).

In determining a *forum non conveniens* motion, "there is a strong presumption in favor of the plaintiff's choice of forum unless private and public interest considerations clearly point to trial in the alternate forum." *Karvelis v. Constellation Lines SA*, 608 F.Supp. 966, 971 (S.D.N.Y.1985) (citing *Gulf Oil Corp. v Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"); *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 966–68 (2d Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Dismissal will ordinarily be appropriate only where plaintiff's choice of forum imposes a heavy burden on the defendant or the court, and where plaintiff is unable to offer any specific reasons of convenience supporting his choice. *Piper Aircraft Co. v. Reyno, supra*, 454 U.S. at 249, 102 S.Ct. at 262.

Where plaintiff is a foreign citizen this presumption in favor of plaintiff's choice has less force. *Piper Aircraft Co., v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1982). Nonetheless, even in this context defendant still has the burden to demonstrate why the presumption in favor of plaintiff's choice, weakened though it may be, should be disturbed. *Karvelis v. Constellation Lines SA*, 608 F.Supp. 966, 972 (S.D.N.Y.1985); *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y. 1983) (foreign plaintiffs' choice of forum "is still entitled to some deference"). *See also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315–316 (4th Cir.1984); *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 66 (2d Cir.1981). Accordingly, in the instant case, the Swedish plaintiff's choice of a New York forum should not be disturbed unless defendant can demonstrate that this forum would be unreasonably inconvenient in terms of the private and public interests involved in the litigation.

*Existence of an Adequate Alternative Forum*

■ Before assessing the private and public interests at stake in a *forum non conveniens* determination, the court must first decide whether an adequate alternative forum exists, *Piper Aircraft Co. v. Reyno, supra*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22, for the *forum non conveniens* doctrine "presupposes at least two forums in which defendant is amenable to process." *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 506–507, 67 S.Ct. at 842; *see also In re: Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December 1984*, 634 F.Supp. 842 (S.D.N.Y. 1986). Ordinarily the requirement of an alternative forum will be satisfied simply if defendants are amendable to service in the other jurisdiction. *Piper Aircraft Co. v. Reyno, supra*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. If no such alternative forum exists, however, the suit generally should not be dismissed regardless of the private and public inconvenience involved in maintaining suit in the existing forum.

In the present case it is fairly clear that Sweden provides an adequate alternative forum for plaintiff's lawsuit. Sweden has

a well developed legal system containing many important procedural safeguards such as the right to present evidence and call witnesses, and the right to appeal. *See Bergquist v. Medtronic, Inc.,* 379 N.W.2d 508 (Minn.1986); *Wahlin v. Edo Corp.,* 17 Av.Cas. (CCH) 17,562 (Sup.Ct. Queens Co. 1982) (concluding in *forum non conveniens* context that Swedish legal system offers adequate alternative forum). Furthermore, within the Swedish legal system, plaintiff has recourse both to the Swedish Drug Insurance System, a non-exclusive administrative route to recovery, or to the Swedish Court of First Instance. Although Sweden has no jurisdiction over defendant and cannot enforce a judgment against defendant, facts that could obviously defeat the adequacy of Sweden as an alternative forum, the court finds this immaterial in the present context because defendant has represented to the court that if this motion is granted it will voluntarily subject itself to Swedish jurisdiction and will pay any judgment entered against it by a Swedish court. *See In re: Union Carbide Corp. Gas Plant Distaster at Bhopal, India in December 1984, supra,* at 847.

■ Plaintiff's argument that Sweden cannot be said to provide an adequate alternative forum because of its undeveloped and relatively pro-defendant products liability law, is entirely without merit. The fact that an alternative foreign forum offers less favorable law than available in an American forum is clearly insufficient to render the foreign forum "inadequate" for *forum non conveniens* purposes so as to preclude dismissal. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 251–255, 102 S.Ct. 252, 263–265, 70 L.Ed.2d 419 (1981). *But see id.* at 254, 102 S.Ct. at 265 (where remedy provided by alternative forum is so inadequate that it is no remedy at all, the unfavorable change in law may be given substantial weight); *Irish National Insurance Company, Ltd. v. Aer Lingus Teoranta,* 739 F.2d 90, 91 (2d Cir.1984) ("In some instances, ... invocation of the [forum non conveniens] doctrine will send the case to a jurisdiction which has imposed such severe monetary limitations on recov-

ery as to eliminate the likelihood that the case will be tried. When it is obvious that this will occur, discussion of convenience of witnesses takes on a Kafkaesque quality— eveyone knows that *no* witnesses ever will be called to testify." (emphasis added)). Because plaintiff's principal arguments regarding the alleged inadequacy of Sweden as a forum go not to the intrinsic inadequacy of the Swedish legal system or to the utter futility of recourse to Swedish law, but rather, only to the difficulty under Swedish law of obtaining a sizable recovery, under *Piper Aircraft Co. v. Reyno, supra,* plaintiff has patently failed to present any colorable basis for this court to find that Sweden is a less than adequate forum for purposes of this motion.

*Private Interest Factors*

■ Having concluded that an adequate alternate forum exists in Sweden it is now necessary to decide whether the private and public convenience interests implicated in this case weigh so strongly against plaintiff's choice of this forum that dismissal is proper. Looking first to the private interests of the litigants, this court finds that they do not point toward dismissal. These private interest factors, as set forth in *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843, include "all ... practical problems [sic] that make trial of a case easy, expeditious, and inexpensive," specifically: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for the attendance of unwilling witnesses; (iii) the cost of obtaining the attendance of willing witnesses; (iv) the possibility of viewing premises where appropriate; and (v) the enforceability of a judgment if one is obtained.

In the present case the access to sources of proof and the availability of witnesses are the key convenience factors. Premises are largely immaterial as liability evidence in a products liability suit, and to the extent they are relevant to damages here, (i.e., in the form of alterations plaintiff has allegedly made in his apartment to help him deal with his disability), no matter

where this case is tried, photographs would be the likely mode of presenting such information to the trier of fact. As to the enforceability of a judgment, defendant has already promised that it would submit to the enforcement of any Swedish judgment against it. Furthermore, no co-defendants have been named in this suit, nor does there appear to be any concern on defendant's part to bring in third party defendants. Accordingly, the amenability of such parties to this court's jurisdiction and the possible prejudice to defendant if they could not be joined in the lawsuit has no relevance to the appropriateness of plaintiff's chosen forum here. See *Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 259, 102 S.Ct. at 267 (prejudice to defendant who wished to implead Scottish residents, which could not be done if suit remained in American forum, militated in favor of dismissal).

Turning to the first three *Gilbert* private interest factors, considerations generally concerning the convenience of evidence production, this court finds that the present forum is appropriate and indeed, more convenient than the alternate Swedish forum proposed by defendant. Plaintiff invokes theories of negligence, strict liability, and warranty in his lawsuit and asserts that the main liability evidence in this case is located in nearby New Jersey and Pennsylvania where the hepatitis vaccine and its accompanying literature were developed, tested and produced. Defendant does not contest the assertion that much important basic liability evidence is located in America, but argues that much other significant liability evidence regarding the nature of the vaccine and its labelling is located in Sweden. The court does not understand, however, how this can be so. The role of the Swedish government agencies in approving defendant's vaccine appears to be essentially ministerial in that they relied almost entirely on the testing and information supplied by the American defendant. Similarly, it is not alleged by defendant that its Swedish subsidiary had any cognizable role in the developing, testing, and manufacture of the vaccine, the activities

forming the crux of plaintiff's case for liability.

It is apparent to this court, therefore, that the crucial liability evidence in this case is much more conveniently located with respect to plaintiff's chosen forum than it is to defendant's proposed alternative forum, Sweden. This is central to the determination here that defendant has failed to demonstrate the greater convenience of a Swedish forum in terms of the private interest factors involved in this case, and thus any compelling private interest reason for *forum non conveniens* dismissal. See *Friends for All Children v. Lockheed Aircraft Corp.,* 717 F.2d 602, 607–609 (D.C.Cir.1983) (in suit against American manufacturer brought by foreign victims of aircrash in Vietnam, United States location of evidence on key liability issues militates against dismissal); *Macedo v. Boeing Co.,* 693 F.2d 683, 689–90 (7th Cir.1982) (United States (but non-forum) location of evidence of American manufacturer's inadequate warnings in suit by predominantly foreign plaintiffs arising from air crash in Portugal militates against dismissal); *Cf. Hodson v. A.H. Robins Co., Inc.,* 715 F.2d 142 (4th Cir.1983), aff'g. 528 F.Supp. 809 (E.D.Va.1981) (American location of liability evidence in products liability suit brought by foreign plaintiffs militates against dismissal).

■ As to the causation component of liability, this too fails to weigh against plaintiff's chosen forum. Defendant points out that certain of the evidence and witnesses relevant to plaintiff's prior condition and to the administration of the vaccine to plaintiff may be located in Sweden. Since the time of plaintiff's injury though, defendant, itself, has conceded that the vaccine may cause arthritis in some recipients, and has added a warning to this effect. Moreover, even without the concession by defendant that its vaccine does cause arthritis, it seems safe to assume that in this case the main causation witnesses would be experts testifying as to the properties of the vaccine itself, rather than witnesses who have personally participated in the un-

derlying events leading to this litigation. Furthermore, the necessary evidence relating to plaintiff's prior condition and to the events surrounding the vaccine's administration to plaintiff should be quite susceptible to presentation at trial in documentary and deposition form.

Damage evidence will of course also be necessary in this suit, for example, evidence regarding the extent of plaintiff's injuries and the effect they have had on his daily activities and on his putative future in the opera world. Plaintiff argues that witnesses as to his prospects in the opera world will be located in New York City, a world opera capital. Be this as it may, defendant justly contends that a very significant portion of the damage evidence in this case, for example, medical testimony and physical evidence of plaintiff's allegedly handicapped condition, is located in Sweden. The Swedish location of such damage evidence, however, is not adequate to tip the scales in defendant's favor on this motion.

Much of the evidence of damages in this case can be expected to be provided by expert medical witnesses located in the United States, as well as by medical records whose copying and transport from Sweden to the United States the court does not consider overly burdensome. The feasibility of such transport is demonstrated by defendant's own marked willingness to ship from the United States to Sweden the extensive liability evidence regarding testing and development of the vaccine. As to Swedish witnesses unable or unwilling to attend this trial, they can provide testimony by deposition. To the extent that deposition evidence must be relied upon at trial, it should be remembered not only that the use of such evidence is commonplace in the many international trials routinely occurring in this court, but also that it is plaintiff here who has the burden of proof as to damages. Accordingly, to the extent that deposition testimony rather than live testimony could be prejudicial, plaintiff and not defendant is the main victim of this prejudice.

With regard to evidence generally, it must be noted that the inconveniences in this case run both ways. The fact that maintaining plaintiff's suit in this American forum will necessitate the production of Swedish documents and witness is entirely inconclusive; if the case were tried in defendant's preferred alternate forum, Sweden, witnesses and extensive amounts of evidence would have to be transported from the United States to Sweden. Similarly, as to the inconvenience of translating certain materials from Swedish to English if the case remains here, defendant's proposed alternate forum poses the even greater inconvenience of translating large quantities of technical documents from English into Swedish. See *Friends for All Children v. Lockheed Aircraft Corp.*, 717 F.2d 602, 608 (D.C.Cir.1983). In any case, the hardship of translating foreign documents is not of such magnitude as to justify dismissal on *forum non conveniens* grounds. *Karvelis v. Constellation Lines SA*, 608 F.Supp. 966, 972 (S.D.N.Y.1985).

Finally, with regard to the obvious consideration that Pennsylvania or New Jersey might be a more convenient forum than New York, defendant does not appear concerned with the relative inconvenience of a New York forum as opposed to a New Jersey or Pennsylvania one. This is clear from the fact that defendant has not moved for transfer of venue to either of these two states under 28 U.S.C. Section 1404(a). Furthermore, affirmative reasons to support plaintiff's present forum choice can be found in the New York location of potential expert witnesses on plaintiff's damages with respect to his musical career, as well as the New York location of plaintiff's unusually qualified lawyer—fluent in both the Swedish and English languages, as well as in the legal systems of both Sweden and America.

In conclusion, because the most substantial and most crucial evidence in this case, as well as the key liability witnesses, are located in New Jersey and Pennsylvania, and because certain witnesses and unique legal expertise are located in New York,

this court concludes that under the private interest factors set forth in *Gulf Oil Corp. v. Gilbert* there is no reason to favor defendant here in its preference for a Swedish forum. Indeed, considering the issues to be tried in this case, and the proof necessary to try them properly, this court finds that the present forum is a more desirable one because of its better access to evidence on the most crucial liability issues. *See Irish National Insurance Co., Ltd. v. Aer Lingus Teoranta,* 739 F.2d 90 (2d Cir.1984) (reversing lower court's *forum non conveniens* dismissal where the record showed that contrary to district court's conclusion, most of the significant sources of proof were not located in the foreign forum, but instead in the United States).

*Public Interest Factors*

■ The assessment of the other side of the *forum non conveniens* inquiry, that is of the public interest factors implicated in the disputed venue, is particularly troublesome and controversial in the context of products liability litigation by foreign plaintiffs. The public interest factors set forth in *Gulf Oil Corp. v. Gilbert, supra,* include 1) the problem of court congestion, 2) the fairness of imposing jury duty on a community with little relation to the litigation, 3) the local interest in the controversy, and 4) the advantage of having the matter before a court familiar with the applicable law, *id.,* 330 U.S. at 508–509, 67 S.Ct. at 843. In tort actions such as the present one, the "local interest in the controversy" factor often tends to take centerstage in district court determinations adverse to foreign plaintiffs. Various district courts have judged that an American forum has only a negligible interest in a pharmeceutical products liability controversy, when compared to the significant interest of the foreign government which has allowed the drug to be sold within its borders and whose citizen has been injured. Accordingly, these courts have found that the public interest balance of the *forum non conveniens* analysis falls on the side of defendant's proposed alternate forum abroad and thus have dismissed the suits. *See Dowl-*

*ing v. Richardson-Merrell, Inc.,* 727 F.2d 608 (6th Cir.1984), aff'g, *In Re Richardson-Merrell, Inc.,* 545 F.Supp. 1130 (S.D. Ohio 1982); *Harrison v. Wyeth Laboratories,* 510 F.Supp. 1 (E.D.Pa.1980), aff'd mem., 676 F.2d 685 (3d Cir.1982); *Purser v. American Home Products Corp., slip op.* (S.D.N.Y. Jan. 30, 1981).

This court arrives at a quite different judgment from the above courts regarding the force and balancing of the competing public interests, namely that the foreign interest implicated here clearly fails to overwhelm in this *forum non conveniens* determination. The court's divergent conclusion, it must be noted, is not based on any factual distinction between the above decisions and the present case regarding the situs of manufacture of the allegedly harmful product. The above decisions insisting on the greater foreign interest in a products liability litigation brought by a foreigner injured in his own country are technically distinguishable from the present case by the fact that they involved products which though developed in the United States were manufactured abroad. In the present case, the hepatitis vaccine was manufactured in the United States, as well as being developed and tested here. The court does not rely on this distinction because it is without substantial relevance or legal significance. The real issue in each of the above pharmaceutical suits, as in the present one, was not some alleged manufacturing defect but rather the adequacy of the drug's design and testing, and of the basic information package supplied by its creator, all of which issues for the most part centered on behavior occurring in the United States. Thus, the situs of manufacture, while it does generally weaken defendant's argument for transfer in this case, should not make much difference in assessing the relative public interests involved.

Notwithstanding the lack of significant factual distinction as to public interests implicated, between this case and those cases dismissing on *forum non conveniens* grounds similar contentions by foreign

plaintiffs, this court does not believe that dismissal is appropriate here. This conclusion is largely due to the court's basic disagreement with one of the major determinations arrived at and relied on by these other courts, namely that an American forum has only a negligible interest in the issues raised by this type of litigation. This court finds that where an allegedly defective drug has been developed, tested and manufactured in the United States, and is being distributed to and presumably used by American citizens, including citizens of the forum, the forum's interest in litigating the controversy is at least equal to that of the foreign citizen's home forum. See *Lake v. Richardson-Merrell, Inc.*, 538 F.Supp. 262, 275 (N.D.Ohio 1982) (compelling local interest in assuring proper and prudent conduct with regard to locally produced products having potentially devestating effects) (later sustained *sub nom Haddad v. Richardson-Merrell, Inc.*, 588 F.Supp. 1158, 1162 (N.D.Ohio 1984)); *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 823 (E.D.Va.1981) (strong local interest in regulating safety of products manufactured within forum borders), aff'd 715 F.2d 142 (4th Cir.1983); *Mowrey v. Johnson & Johnson*, 524 F.Supp. 771, 777 (W.D. Pa.1981) (no particular Canadian interest in case concerning drugs ingested in Canada, but developed and manufactured in United States, although not in forum).

This weightiness of the forum interest is all the more clear where the drug in question has been FDA approved for use in the United States and thus in this forum, and where the foreign government's decision to license and distribute the product is based essentially on information furnished by the American pharmeceutical company, information substantially the same as that also furnished to and relied on by the American authorities. These same facts highlight the relative unremarkableness of the Swedish interest here. Because Sweden relies so heavily on the information produced in the United States and has come to the same determination regarding this vaccine as the FDA, it cannot be convincingly argued that trial in this forum would seriously impinge on Swedish interests. This is not a situation where American adjudication of a products liability dispute would somehow displace the foreign government's decision regarding the acceptablity of the risks of certain drugs. Sweden's acceptance of the hepatitis vaccine at issue in this case in no way reflects a cost/benefit analysis of the drug's risks that diverges from the American cost/benefit analysis of these risks. This suit does not challenge the acceptability of Sweden's decision to allow this drug to be used there, but rather challenges defendant's conduct in distributing the drug, both in Sweden and in America, allegedly without adequate testing and warning of its risks.

Moreover, the fact that Sweden does have an interest in this litigation, something well recognized by this court, is not dispositive of a *forum non conveneniens* motion. For one thing, even if this court were to find that Sweden's interest in this litigation were more substantial than the interest of an American forum, this is only one factor among many public and private interest factors. Furthermore, it must be emphasized that the overriding inquiry in a *forum non conveniens* motion is not whether some other forum might be a good one, or even a better one than plaintiff's chosen forum. The question to be answered is whether plaintiff's chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved. That Sweden may have an interest in this lawsuit does not in any way alter the fact that plaintiff's chosen forum also has a significant interest in its outcome or that the crucial liability evidence in this case is more convenient to the present forum than to the proposed alternate forum. Accordingly, Sweden's acknowledged interest in this lawsuit, even if it were stronger than the present forum's interest—which this court does not find it to be—would not necessarily form adequate grounds for *forum non conveniens* dismissal.

■ A more problematic public interest consideration in this case concerns the ap-

plicable law. Under the New York State choice of law rules which this court must apply, *see Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), it is not entirely clear whether Swedish or Pennsylvania law would apply. A careful reading of the latest New York Court of Appeals decision construing the state's "interest analysis" approach to choice of law, *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985), leads this court to conclude, however, that under New York choice of law rules, Pennsylvania law should apply.

*Schultz* applied New York's interest analysis approach to choice of law, *see Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), to a conflict concerning the loss allocation rule of charitable immunity. The court found that in such a context the domicile of the parties generally governed the choice of law. In dicta, however, the court considered the problem of conflicts concerning behavior-regulating rather than loss allocation rules. It stated that under the "interest analysis" approach, where conduct regulating rules of law were at issue, "the law of the place of the tort 'will usually have a predominant, if not exclusive, concern' ". *id.* 491 N.Y.S.2d at 95, 480 N.E.2d at 684 (quoting *Babcock*, 12 N.Y.2d at 483, 240 N.Y.S.2d 743, 191 N.E.2d 279).

Under New York law, in a situation where the place of the allegedly wrongful behavior and the place of the injury are different, the place of the wrong is defined as the place of the injury. *Id.* 491 N.Y.S.2d at 94, 480 N.E.2d at 683. Thus, in the present case, strictly speaking, the place of the wrong is Sweden, where plaintiff was injured, while Pennsylvania is merely the place of the tortious act. The underlying New York state rationale, however, as articulated in *Schultz*, for applying the law of the place of the tort where conduct-regulating rules are concerned, mandates that Pennsylvania and not Swedish law apply here. The *Schultz* rationale for favoring the law of the "locus" in the context of conduct-regulating rules derives from the

"critical interest" of the "locus jurisdiction ... in protecting the reasonable expectations of the parties who relied on [its law] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future". *Id.*, 491 N.Y.S.2d at 96, 480 N.E.2d at 684–685. This fundamental rationale respecting a particular jurisdiction's interest in affecting primary behavior clearly applies to the place of the wrong, i.e., where defendant is located and where his allegedly wrongful behavior has occurred, rather than to the place of the injury. See *Long v. Pan American World Airways*, 16 N.Y.2d 337, 342–343, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965) (cited in *Schultz v. Boy Scouts of America, Inc., supra*, 491 N.Y.S.2d at 94, 480 N.E.2d at 683).

Accordingly, under the fundamental principles of New York's interest analysis for choice of law, this court concludes that the law of Pennsylvania, that is, the site of the allegedly defective vaccine's development and manufacture, should control. *See also In re Air Crash Disaster at Mannheim, Germany*, 769 F.2d 115 (3d Cir.1985) (applying "interest approach" to conflicts of law, determination that law of place of manufacture rather than place of injury applies since the state of manufacture has the greatest interest in governing the liability of manufacturers within its borders.)

■ Returning to the *forum non conveniens* analysis, this court finds that there is nothing about the law to be applied in this case that militates in favor of dismissal. The fact that Pennsylvania's product's liability law rather than that of New York would apply in this case presents no great inconvenience to the court. Pennsylvania products liability law is not substantially different from that which this court is habitually called upon to apply in its not infrequent experiences with products liability litigation. Furthermore, it must be noted that even were the choice of law analysis to favor application of Swedish law, this would not suffice to mandate forum non conveniens dismissal. *See London Film*

*Productions Ltd. v. Intercontinental Communications, Inc.,* 580 F.Supp. 47 (S.D.N.Y.1984) (citing *Manu Int'l S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67–68 (2d Cir.1981). In any event, according to this court's determination that Pennsylvania law applies here, it is quite evident that the choice of law public interest factor presents no argument for the dismissal of this case on *forum non conveniens* grounds.

CONCLUSION

In conclusion, the court determines that defendant has failed to meet its burden of demonstrating the inappropriateness and inconvenience of the present forum such as to warrant a dismissal for *forum non conveniens.* That defendant finds its proposed alternate forum preferable, or believes it to be the best possible forum among many available ones, is simply not adequate grounds for granting this motion. Accordingly, the court having found that neither the private or public interest factors implicated in this case render plaintiff's chosen forum an inappropriate or prejudicial one, defendant's motion to dismiss on grounds of *forum non conveniens* is denied.