966 So.2d 415 (2007)
Gerri Lynn FIHE, individually, as Personal Representative of the Estate of John Fihe, and as parent and next friend of Erin Elizabeth Fihe and John Christopher Fihe, minor children, Julie Louise Jamieson and Brian Scott Jamieson, Appellants,
v.
REXALL SUNDOWN, INC., a Florida corporation, d/b/a Richardson Labs, Inc., RS Oldco, Inc., NBTY, Inc., Nutrition USA, Inc., Meijer, Meijer Companies, Ltd., and Meijer Distribution, Inc., Appellees.
Nos. 4D06-100, 4D06-154.
District Court of Appeal of Florida, Fourth District.
August 29, 2007.
Rehearing Denied November 7, 2007.
*416 Thomas F. Gonzalez of Beggs & Lane, Pensacola, for Appellants-Julie Louise Jamieson and Brian Scott Jamieson, and Douglass A. Kreis of Aylstock, Witkin & Sasser, PLC, Pensacola, for Appellant-Gerri Lynn Fihe.
Steven J. Rothman of Jones Foster Johnston & Stubbs, P.A., West Palm Beach, and Ulmer & Berne LLP, Cincinnati, OH, for appellees.
TAYLOR, J.
In these consolidated appeals, the Fihe and Jamieson plaintiffs challenge trial court orders which dismissed their wrongful death and personal injury actions on grounds of forum non conveniens. We *417 reverse dismissal of the Fihe case because the defendants' motion to dismiss, brought outside the sixty-day limitation in Rule 1.061(g), was untimely as to that case. We affirm dismissal of the Jamieson case because the trial court did not abuse its discretion in finding that dismissal for forum non conveniens was appropriate when applying the Kinney[1] factors.
On May 30, 2003, Gerri Lynn Fihe, individually and as personal representative of the Estate of John Fihe, sued Rexall Sundown, Inc. in Palm Beach County, Florida. The complaint alleged that the decedent's sudden cardiac death was caused by his regular consumption of the dietary supplement Metab-O-LITE, an ephedra-containing product manufactured by defendant. John Fihe died in or near Louisville, Kentucky. The complaint alleged strict liability, defective design and failure to warn, breach of express and implied warranties, negligence, deceit/fraud by concealment and suppression, violation of Florida's Deceptive and Unfair Trade Practices Act, and wrongful death.
On August 18, 2004, Julie Louise Jamieson and Brian Scott Jamieson sued Rexall Sundown, d/b/a Richardson Labs, RS Oldco, Inc., NBTY, Inc., Nutrition USA, Inc., Meijer, Meijer Companies, Ltd., and Meijer Distribution, Inc., in a seven-count complaint, alleging strict products liability, negligence, and fraud. The complaint alleged that Julie Jamieson suffered a stroke as the result of taking Metab-O-LITE. She resided in Macomb, Michigan and purchased the product from a Meijer store located there.
On October 20, 2004, the defendants timely moved to dismiss the Jamieson action based on forum non conveniens.
On September 1, 2004, more than a year after the case was filed, Rexall moved for an enlargement of time to file a motion to dismiss based on forum non conveniens grounds in the Fihe case. Rexall never actually set a hearing on the motion; it urged the court to dismiss the case "sua sponte."
Rexall Sundown, Inc. n/k/a RS Oldco, Inc. (Rexall) is the Florida corporation which manufactured Metab-O-LITE. Richardson Labs, Inc., n/k/a RL Oldco, Inc. (Richardson), a wholly-owned subsidiary of Rexall, distributed the product. The product was originally formulated in Boca Raton, Florida prior to 1999. The substance was then marketed between August 1999 and April 30, 2003. During that time, Rexall's principal place of business was at 6111 Broken Sound Parkway NW, Boca Raton, Florida. A comprehensive review of the relevant scientific literature was carried out by Rexall in Boca Raton, Florida. Before its discontinuance, the product was exclusively manufactured at Rexall's manufacturing facility in Boca Raton. The product was packaged at a Rexall facility in Broward County. Rexall distributed the product throughout the United States from distribution facilities in Boca Raton, Florida, as well as in Pennsylvania and Nevada. Advertising for the product was created by Rexall employees in Boca Raton, who worked in conjunction with a New York advertising agency. The label on the Metab-O-LITE bottle stated that it was "distributed by Richardson Labs, Inc., Boca Raton, Florida."
After the Fihe suit was filed, Rexall changed its name to RS Oldco, Inc., and purportedly transferred its Metab-O-LITE liabilities to another company, Nutrition USA, Inc. Rexall claims that there is now a "new" Rexall Sundown, Inc., which continues to maintain Rexall's old *418 offices at 6111 Broken Sound Parkway, Boca Raton but has a new principal place of business in Bohemia, New York as a result of new ownership of the company's stock.
Rexall asserts that its former employees are located throughout the country, but it does not specify where they have moved. Ray Stadnick, Rexall's Vice-President of Quality, has remained with the "new" Rexall here in Florida. He has not yet been deposed. Debbie DeSantis, former Vice-President of Product Development, is another Florida resident; she has given at least a partial videotaped deposition in the consolidated ephedra proceedings captioned In re: Ephedra Products Liability, Multi-District Litigation (MDL) 1598, S.D.N.Y. (which was cross-noticed in many state cases, although apparently not in these). Richard Webber, who resigned as the company's general counsel in July 2003, resides in Boca Raton. Geary Cotton, Rexall's Chief Financial Officer, who resigned in September 2001, resides in Broward County. Damon DeSantis, who resigned as Chief Executive Officer in September 2001, resides in Broward County. Rexall admits that all of its former corporate officers listed in its annual filings with the State of Florida still reside in Florida.
In his affidavit, Fihe's counsel, Douglass A. Kreis, Esq., stated that he had identified six Rexall executives, all located in Florida, who have critical information:
1. Richard Webber, General Counsel during the relevant time-frame.
2. Geary Cotton, CFO during the relevant time-frame.
3. Damon DeSantis, CFO during the relevant time-frame.
4. Carl DeSantis, Chairman of the Board during the relevant time-frame.
5. Stanley Leedy, a member of the Board of Directors during the relevant time-frame.
6. Christian Nast, Vice-Chairman of the Board during the relevant time-frame.
Rexall asserts that all documents pertaining to Rexall's manufacture and sale of Metab-O-LITE have been copied to CD-ROM and can be produced anywhere.
Rexall's affidavit in support of its motion to dismiss for forum non conveniens broadly asserts that the plaintiff's documents, fact witnesses, treating physicians and party witnesses relevant to the sale, purchase, and use of the products "will likely be located outside Florida." In addition to the affidavits of counsel and answers to requests for admissions, the trial court considered plaintiff's interrogatory answers, which showed that their medical providers were located in their home jurisdictions and that certain family members might be witnesses.
The trial court entered an order dismissing the Fihe case for forum non conveniens. In the order, the trial court stated that it had the discretion to consider the forum non conveniens issue more than sixty days after the complaint was filed. The trial court then found that the private interests were not at equipoise but favored transferring the cases to the plaintiffs' home states, where unnamed fact witnesses and medical records were located. The trial court also relied on Rexall's representation that it would produce its former employees for depositions in the foreign forums. The court further relied on Rexall's representations that it had placed all of its Metab-O-LITE-related documents onto CD-ROM for production. The court concluded that, overall, the foreign forums were much more convenient. Alternatively, it found that even if the private interests were near equipoise, the public interest favored transfer because the law of the plaintiffs' domiciles would *419 control because there was no "current" nexus between the defendants and the forum and the case would be a burden to the Palm Beach County judicial system.
A similar order was entered dismissing the Jamieson case.
Fihe
The trial court lacks any discretion in the interpretation, as opposed to the application, of the Florida Rules of Civil Procedure. Castaneda ex rel. Cardona v. Redlands Christian Migrant Ass'n, 884 So.2d 1087, 1093 (Fla. 4th DCA 2004). Rule 1.061(g) provides that a motion to dismiss for forum non conveniens "shall be served not later than 60 days after service of process on the moving party." We have strictly enforced this limitation, repeatedly reversing trial court attempts to grant untimely forum non conveniens motions. See Phillips v. Am. Optical Corp., 914 So.2d 527, 528 (Fla. 4th DCA 2005); Bosarge v. Am. Optical Corp., 913 So.2d 1265, 1266-67 (Fla. 4th DCA 2005); Sanders v. Union Carbide Corp., 911 So.2d 1256 (Fla. 4th DCA 2005); Fox v. Union Carbide Corp., 910 So.2d 422, 424 (Fla. 4th DCA 2005).
The third district has recently held that a trial court has the discretion to enlarge the sixty-day time period, but "only" when the failure to act was the result of excusable neglect. Dawson Ins., Inc. v. Quantum Capital Network, LLC, 923 So.2d 1194, 1195 (Fla. 3d DCA 2006). Rexall admitted at the hearing that its failure to act within sixty days in the Fihe case was not the result of excusable neglect. Rather, Rexall relies on the third district's earlier decision in Verysell-Holding LLC v. Tsukanov, 866 So.2d 114, 115 (Fla. 3d DCA 2004). There, the defendant filed an untimely motion to dismiss, but contended that the trial court had the inherent power to dismiss the case sua sponte even after the expiration of the sixty days. The third district accepted this argument. We disagree with this holding in Verysell-Holding.[2]"Sua sponte" is defined as, "[o]f his . . . own will or motion; voluntarily; without prompting or suggestion." BLACK'S LAW DICTIONARY 1424 (6th ed. 1990). Once a defendant moves, suggests, or even hints that the case should be dismissed for forum non conveniens, the trial court can no longer act sua sponte. To do so would eviscerate the rule's sixty-day time limit. We therefore reverse dismissal of the Fihe case.
Jamieson
A trial court's decision on a forum non conveniens issue is reviewed for an abuse of discretion. Corinthian Colleges, Inc. v. Philadelphia Indem. Ins. Co., 922 So.2d 1077, 1079 (Fla. 4th DCA 2006).
In Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), Florida largely adopted federal forum non conveniens principles. The Florida Supreme Court codified this approach in Florida Rule of Civil Procedure 1.061, which provides as grounds for dismissal:
An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;

*420 (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.
Fla. R. Civ. P. 1.061(a) (2005). In this case, only factors two and three are at issue.
The second prong of the Kinney analysis weighs the private interests, taking into account the presumption in favor of the plaintiff's choice of forum. The private interest factors are: 1) adequate access to evidence and relevant sites; 2) adequate access to witnesses; 3) adequate enforcement of judgments; and 4) the practicalities and expenses associated with the litigation. Kinney, 674 So.2d at 91. In this case, enforcement of judgments is not an issue; nor is there any relevant site to be viewed. Essentially then, the private interest issue concerns the availability of evidence.
The liability evidence in this case appears to be mostly in Florida, where the product was researched, designed, manufactured and marketed. While strict liability (i.e., defectiveness) can probably be established through experts alone, the plaintiffs have also put forward negligence, fraud, and unfair trade practices theories, which will require close examination of Rexall's top executives, most of whom still reside in South Florida. Causation will be a matter of expert proof, though the plaintiffs' medical records will also be relevant. Damages evidence will be in the foreign forums.
The trial court appears to have placed great reliance on Rexall's offer to produce its witnesses for depositions elsewhere. However, these witnesses are allegedly former employees, and a corporate defendant should not be able to tip the "forum shopping/reverse forum shopping" scales by such offers or by its assurance that it has placed all of its documents on CD-ROM.
The third step of the Kinney analysis comes into play "only if, in weighing the opposing parties' private interest factors, the trial court finds them to be at or near equipoise, after taking into account the presumption favoring the plaintiff's choice of forum." Kinney, 674 So.2d at 91. We have interpreted this to mean that, unless a court finds the private interest factors are "overwhelming" in one party's favor, the court must then consider the public interest factors. Banco Inversion, S.A. v. Celtic Fin. Corp., S.A., 907 So.2d 704, 710 (Fla. 4th DCA 2005).
Although the trial court did not describe the private interest factors as overwhelming, it specifically found that they were not at equipoise, thus justifying dismissal. The most analogous case we have found on this point is Wright v. Aventis Pasteur, Inc., 905 A.2d 544 (Pa.Super.Ct.2006), appeal denied, 591 Pa. 674, 916 A.2d 1103 (2007). There, the court reversed a trial court dismissal in a drug case involving a foreign plaintiff on similar facts. See also In re: VIOXX Litig., No. 619, 2006 WL 2950622 (N.J.Super. Ct. Law Div. Oct. 2, 2006), aff'd, 395 N.J.Super. 358, 928 A.2d 935 (2007) (discussing New Jersey's acceptance of thousands of Vioxx cases involving American citizens from others states). These cases support the view that, at worst, the instant case was one where the private interests were at equipoise. Because *421 the private interests in favor of the foreign forums were not overwhelming, the trial court was required to consider the public interests.
Turning then to the public interest factors, we note that "[i]n broad terms, the inquiry focuses on `whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.'" Kinney, 674 So.2d at 92 (quoting Pain v. United Techs. Corp., 637 F.2d 775, 791 (D.C.Cir.1980)). Kinney "summarized the underlying rationale of this inquiry" by quoting from Pain:
Three principles may be derived from the list of public interest factors enunciated in [Gulf Oil Corp. v.] Gilbert [330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)]: first, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case. Thus, even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.
Kinney, 674 So.2d at 92 (quoting Pain, 637 F.2d at 791-92 (footnotes omitted)). While this quote from Pain states the public interest grounds for dismissal in the disjunctive ("or"), Kinney clarifies that in Florida these factors are to be balanced and will only support dismissal if, on balance, all of the public interest factors strongly favor dismissal:
As a corollary, if the public interest factors themselves are at or near equipoise, then the third step of the inquiry will provide no basis for defeating the presumption favoring plaintiff's choice of forum.
Kinney, 674 So.2d at 92.
The trial court opined that Rexall's nexus with the forum was not strong enough to justify the expenditure of local judicial resources. The United States Supreme Court's decision in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), supports that argument. That case was a wrongful death action stemming from an airline crash in Scotland. The Scottish plaintiff brought a products liability action against a Pennsylvania plane manufacturer and an Ohio propeller manufacturer in a California state court. The action was then removed to a federal court, which then transferred the action to the federal court in Pennsylvania. The federal district court in Pennsylvania dismissed on forum non conveniens grounds in favor of the action proceeding in Scotland. The Third Circuit reversed, but the Supreme Court granted certiorari and reinstated the district court's dismissal.
In assessing the public interest, the Supreme Court found Scotland's interest in the accident paramount and rejected the plaintiff's argument regarding America's interest in the litigation:
However, the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.
*422 Id. at 260-61, 102 S.Ct. 252; see also Dowling v. Richardson-Merrell, Inc., 727 F.2d 608 (6th Cir.1984); Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp., 510 F.Supp. 1 (E.D.Pa.1980); Engstrom v. Bayer Corp., 855 A.2d 52 (Pa.Super.Ct.2004), appeal denied, 585 Pa. 690, 887 A.2d 1242 (2005). However, there is much contrary authority. See Reid-Walen v. Hansen, 933 F.2d 1390, 1400 (8th Cir. 1991) (reversing trial court's holding that case would be an undue burden on local community, and holding that "defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens"); Lacey v. Cessna Aircraft Co., 862 F.2d 38, 48 (3d Cir.1988) (holding that where Pennsylvania may be the locus of the alleged culpable conduct it has at least some interest in deterring the manufacture of unsafe products within its border); Dorman v. Emerson Elec. Co., 789 F.Supp. 296, 297-98 (E.D.Mo.1992) (holding that defendant's home forum had a strong interest in providing forum for redress of injuries caused by its citizens, whereas a simple tort suit is generally not of broad public interest in plaintiff's home forum); Chan Tse Ming v. Cordis Corp., 704 F.Supp. 217, 219 (S.D.Fla.1989) (holding that since pacemaker's manufacture, development and testing occurred in Florida, that jurisdiction "certainly" had a significant interest in the outcome of the litigation); Carlenstolpe v. Merck & Co., 638 F.Supp. 901, 909 (S.D.N.Y.1986) (finding that "where an allegedly defective drug has been developed, tested and manufactured in the United States, and is being distributed to and presumably used by American citizens, including citizens of the forum, the forum's interest in litigating the controversy is at least equal to that of the foreign citizen's home forum"); Wright, 905 A.2d at 551 (reversing trial court's holding that the people of Pennsylvania had no interest in the case since several of the defendant drug companies make critical manufacturing and marketing decisions there); Margaret G. Stewart, Forum Non Conveniens: A Doctrine in Search of a Role, 74 CAL. L.REV. 1259, 1284 (1986) (arguing that if the defendant is a citizen of the forum it is not "disinterested," and it is not unfair to impose on that forum the economic burden of litigating the claims).
Piper also held that Scotland had a "very strong interest" in litigating the claim because the air crash occurred there and most of the parties were Scottish or English. 454 U.S. at 260, 102 S.Ct. 252. It is less than clear that this interest outweighs the interest of the defendant's home forum, where the culpable conduct allegedly occurred. See Stewart, supra, at 1322-23 ("Given the fact that the plaintiff, generally a citizen or subject of the other sovereign, chose to litigate elsewhere, the only competing interest not served by use of foreign substantive lawthe political interest in resolving a local dispute locallyshould not suffice to sustain dismissal.").
Piper found that the American interest there did not justify "the enormous commitment of judicial time and resources" which would be involved in that single wrongful death action. 454 U.S. at 261, 102 S.Ct. 252. By contrast, New Jersey apparently found that it was not unduly burdensome to accept thousands of Vioxx cases involving plaintiffs from other American jurisdictions. In Re VIOXX, 2006 WL 2950622. Here, the trial court was considering only a handful of Metab-O-LITE cases, and the statute of limitations had nearly run.
Although the Piper decision does have the virtue of dividing the labor among jurisdictions in mass tort cases, an argument could be made that this is actually a duplication of effort, and that such cases are more efficiently handled in a single court. Moreover, a relatively liberal interpretation may have the effect of placing *423 Florida businesses at a competitive disadvantage. See Stangvik v. Shiley Inc., 54 Cal.3d 744, 1 Cal.Rptr.2d 556, 819 P.2d 14, 24 (1991). A multi-national drug company, for example, in choosing to locate or relocate, might prefer another jurisdiction with more conservative forum non conveniens rules, which might significantly lessen their worldwide tort exposure.
Finally, in assessing the public interest balance, courts must consider the "choice of law" factor. The plaintiffs have conceded that Michigan law will apply. Though this is a factor in the balance, there has been no showing that Michigan products liability laws are unique or difficult to understand. See Corinthian Colleges, Inc., 922 So.2d at 1081 (noting that both forums are equally familiar with duty to defend law); Wright, 905 A.2d at 551 ("[T]here is no basis upon which to conclude that the law determined to be applicable is beyond the ken of a Philadelphia trial judge."). This is not a case where foreign law is in a different language or is not descended from the common law tradition of Great Britain. See Reid-Walen, 933 F.2d at 1401 (discussing ease of application of Jamaican law).
In sum, based on Piper, a reasonable person could conclude that the fact that plaintiffs reside in Michigan and foreign law will apply significantly outweighs the fact that this is the defendant's home forum, where the culpable conduct allegedly occurred. Thus, the public interest factor arguably supports dismissal. Accordingly, we defer to the trial court's conclusion and affirm dismissal of the Jamieson case.
Affirmed in part, reversed in part.
SHAHOOD, C.J., and GROSS, J., concur.
NOTES
[1] See Kinney Sys., Inc. v. Cont'l Ins. Co., 674 So.2d 86 (Fla.1996).
[2] We note that we followed Verysell-Holding in Valdivia v. Prestige Cruises, N.V., 898 So.2d 271, 272 (Fla. 4th DCA), review denied, 917 So.2d 196 (Fla.2005). However, the facts are not fully set out in Valdivia. Because there is no mention of an untimely motion or suggestion by the defendant in Valdivia, the trial court there may indeed have been acting sua sponte. In any event, we follow the more recent decisions in Phillips, Bosarge, Sanders and Fox, which have strictly applied the sixty-day time limit.